The Old Rosabella Court, Third Division, is now in session. The Honorable Justice Justice G. Reyes is presiding. Good morning ladies and gentlemen. Please have a seat. People for Mr. Smith. All right, would the counsels that are going to argue this matter please approach? And for the record, would you state your name and what party you're representing? My name is Anna Carlozzi with the Office of the State Appellate Defender on behalf of Mr. Smith, the appellant. Okay. Did you say Carlozzi? Carlozzi. Carlozzi, thank you. Assistant State's Attorney Amy McGowan for the people. Okay. All right, so 15 minutes apiece. Any time for rebuttal? Yes. How much? Three minutes. Three minutes. Okay. And just as a reminder, the microphone doesn't amplify. It's only for recording purposes. Okay. Okay. All right. Let's proceed. Okay. May it please the Court. This case turns on two questions. First, does the armed habitual criminal statute arguably use the present tense? And second, is an attorney arguably ineffective for failing to realize that? This Court has answered these questions in varying ways, and they are now in front of the Supreme Court. Because both questions can be answered in the affirmative, this Court should reverse the summary dismissal of Michael Smith's post-conviction petition raising these arguable claims. And what's your request? Remand this? I'm sorry? What's your request? To remand it? You mean for second stage proceedings? Yes. Yes, that is the request to ask for. Okay. And so what would happen in second stage proceedings for remand this? Realistically, what I think would happen is everyone would wait until the Supreme Court decides gray. So then maybe we should wait. Maybe. Okay. Although this case and others like it rely on the 2014 amendment to the Juvenile Court Act, the statute that's really at issue here is the armed habitual criminal statute. That statute has four elements. One, the receiving, selling, possessing, or transferring of two, a firearm, after three and four, having been convicted of two predicate offenses. So defending against such a charge requires. Ms. Carlosi. Yes. But doesn't the very language of the armed habitual criminal statute effectively defeat your position when it speaks of an offender who possesses a firearm, quote, after having been convicted, end quote, of two or more felonies? Well, it says of two or more of the following offenses, I believe. And then when you go into the subsections, those subsections all use the present tense. And so that tells us that what we have to look at is not the status of the prior offenses. Well, I guess the conviction status of the prior offense, but what that offense would be qualified as today. And so subsection A uses as defined. That means as currently defined. Subsection B uses as described. That means as currently described. And subsection C uses as punishable. And that means as currently punishable. Is the statute retroactive or prospective? Which? The statute. The armed habitual criminal statute? Yes. I think it's, I don't know, not prospective. The juvenile court act. Well, the juvenile court act is not retroactive. It is prospective. But again, it's not the juvenile court act that's really at issue here. I mean, these cases rely on that. But what's at issue is the plain language of the armed habitual criminal statute. And the plain language of that statute requires us to look at what is currently a predicate offense under current law. And so, you know, for example, if the Candidates Control Act was amended so that all offenses that were classified as class 3 offenses were reclassified as class 4 offenses, we would expect an attorney to know that and to, you know, look at the law and to challenge whether his client's class 3 offense still qualifies as a predicate conviction. Let me ask you this. This plea was pursuant to a 402 conference, correct? Yes. All right. Do we have any transcripts or a recording to the 402 conference? No. Do we have anything after the 402 conference was conducted to indicate what happened in the conference? They talk a little bit about it during the plea. I believe that the state asked for more time, but the judge indicated that at the conference he recommended 12 years, and that is, in fact, what he imposed. So how do we know that this wasn't discussed in the 402 conference with regards to the issue that you're raising? And then the judge just informed counsel, whatever he informed them as to the court's position? Meaning that it was a qualifying predicate? It could have been the other way, right? We don't know, right? Yeah. You mean that it was brought up and the court disagreed? Right. On the 402 conference. Yes. But if that happened – Was there any indication in the record that that happened? No. But if it did happen and counsel believed that that was a viable defense, then he should not have advised Mr. Smith to plead guilty. He should have – But as the appellant, shouldn't you be presenting – it's your burden here, right? So shouldn't you be presenting something to us as to what happened in the 402 conference and how it affected this plea agreement? Because this was at the crux of this case, right? Yes. You pled guilty, right? Yes. So with regards to the 402 conference, do we know what actually happened there? No, but I think that's something that could come out at a third-stage evidentiary hearing. How is that going to come out at a third-stage evidentiary hearing? If Mr. Smith is called to testify, he can testify as to, you know, whether his attorney discussed this with him at all, whether it was on his attorney's mind, whether it was brought up in the 402 conference. So now we're going to get into a he, she, he said, she said, right? Well, I mean, that's what happens at an evidentiary hearing oftentimes. But there's usually a transcript or a record or something that we could – the court could point to, right? Sometimes, but – Sometimes, but the point of post-conviction proceedings is that you can bring in, you know, information that was not part of the official appellate record. And so oftentimes that includes something like maybe an affidavit, you know, at the first stage. At the second stage, again, maybe an affidavit, maybe something else, if an attorney finds that it's proper to, you know, supplement the petition with that. And then at the third stage, to have a hearing and to call witnesses, right? And I mean – and Mr. Smith's attorney could also be called and could be asked, was this on your mind? Did you think about this? Did you do something before? But at this point in time, for our purposes here today, we don't have anything to indicate what exactly is the ineffectiveness here. Because there may have been a discussion with the trial judge during the 402 conference there, and there may not have been, right? Yes. But I think that if there was a discussion and the court disagreed, I mean, because this is a viable defense. And so if there's a viable defense, counsel should not have advised Mr. Smith to plead guilty. If he realized that this was a viable defense, he should have filed a motion to dismiss the indictment. Is your client saying that he would not have pled guilty if he was apprised of the change of the Juvenile Court Act about the arson, rather than it being a conviction and adjudication if it happened at the time of the plea? He's saying that he would not have pled guilty to armed habitual criminal. He may have, you know, the plea negotiations may still have occurred, but it could have happened with he was charged with aggravated unlawful use of a weapon and unlawful use of a weapon by a felon. And so plea proceedings could have proceeded on one of those charges. And both of those charges, I believe, for Mr. Smith carried a sentencing range of, I believe the UUF had a range of 7 to 14, and I believe the ad UUW had a range of 3 to 14. But Mr. Smith got 12 years, you know, which would be at the high end of the top of 14. And additionally, if he had been convicted of one of those other offenses, he says it would be served at 50 percent instead of 85 percent, which is what he's serving now. So as I understand it, your argument is that counsel should have known about the amendment to the Juvenile Court Act and its potential impact regarding the armed habitual criminal, correct? Counsel absolutely should have been aware of the amendment to the Juvenile Court Act. My question is were there any cases that interpreted the statute in any manner, shape, or form at that point in time when the plea was entered? There were no appellate cases. Were there any other kind of cases? I don't know. You know, I don't know if this was ever brought up in the trial court because the nature of appeals is, you know, if an argument was successful or mentioned maybe during plea negotiations and the state said, I don't want to deal with that. Let's, you know, let's negotiate on a lower offense, something like that. So we don't know if it was ever brought up. But other attorneys were using the amendment to the Juvenile Court Act to, you know, argue that there might. Did you provide this court with that information? In my brief? Yeah. I did not. So all we have right now is how it applied to this particular case at this point in time when he made the plea. And you indicated that there was no cases interpreting the statute at the time the plea was entered. So how would counsel know how this statute is applicable? I mean, he had the statute correct and the amendment, but based on case law, how would counsel know whether or not this was something that he or she could utilize to benefit his client or not? When defending against a charge of armed habitual criminal, especially if maybe the possessing in the firearm portions are indisputable, the only things you might be able to attack are the predicate convictions. So an attorney has to look at, you know, he has to go, he has to look at the armed habitual criminal statute, see where his client's predicate convictions fall under which subsection, and those subsections require us to look outside of the armed habitual criminal statute. Right? Subsection A requires us to look at the forcible felony statute. Subsection B might require us to look at subdivision B-1 of the aggravated battery statute. Subsection C might require us to look at the Cannabis Control Act. Right? So the statute itself requires us to go outside the four corners of the statute and to look at other parts of Illinois law. Right? And so that's kind of where... And you don't have any Illinois law on this. Right? At the point in time when the plea was entered. I mean, Illinois statutory law. Oh. Okay. Right? Because you look at the statute. And so again, if all Class 3 cannabis offenses were reclassified as Class 4 offenses, you would expect the attorney to look at the current state of the law, to look at the current version of the Cannabis Control Act, say, oh, well, my clients, you know, based on the amount my client had, his Class 3 offense would no longer be a Class 3 offense. Today it would be a Class 4 offense. And so his offense is not currently punishable as a Class 3 offense and therefore wouldn't qualify as a predicate. And I think... To follow up on Justice Reyes' questions, you're almost expecting counsel to be prescient, to know what the future is going to hold. And the case law is very clear, right, that we don't do that. We can't hold an attorney's competence to be accountable for things that are going to happen in the future, for the change in the case law that will happen in the future, right? Yes, but in Strickland, basically says a reviewing court must strongly presume that counsel is competent. So don't you think that's a pretty high bar to overcome? Well, here, all Mr. Smith needed to do was make an arguable claim. And this is arguable. You know, he doesn't have to prove anything at this point. It just has to be arguable. And it's not... The change in the law wasn't People v. Gray, and it wasn't People v. Miles. Mr. Gray's case was not the first time this issue was raised. It was raised in two prior cases. That opinion is just the opinion that came up first, right? People v. Miles is also not the first case where that issue was raised. It's just that the first case that did raise that was unpublished. And so no one could cite it. So irrespective of how the case law ultimately shook out or shakes out, you're saying that just based on the change that had occurred in the Juvenile Court Act, he should have at least told them about it to see whether he wanted to plead or not? I mean, he should have realized that he had a viable defense and, you know, prepared a motion to dismiss the indictment. Or, you know, use this in negotiations to maybe negotiate for a plea on a lesser sentence. But, you know, I mean, he needed to advise Mr. Smith that he did indeed have a viable defense, which Mr. Smith did not know. And that is why, you know, his attorney advised him to plead guilty. I would hope that an attorney would not advise a client to plead guilty if they have a valid defense. And so, you know, that's why Mr. Smith fled. So that's why his attorney was ineffective. We're putting Miles aside. Prior to Miles, were there any cases that anticipated the reasoning of Miles or foreshadowed what Miles was going to end up saying at the time when this plea was entered? Oh, when this plea was entered? Yes. That I'm not sure about. There's no appellate cases. But, again, we don't necessarily know what goes on in the trial court. If someone was successful, then we wouldn't know about it. But that wouldn't help counsel at the trial level. I mean, if another judge in another room entered a sort of Miles type of order, entered on an argument, I mean, you can't use that necessarily as precedent and go in front of another judge and say, well, Judge so-and-so said this, and for this reason, Judge, you should follow this reasoning. You wouldn't have to use that judge's decision as precedent. You would use that other attorney's argument to put forth the same argument for your client. And if this judge happens to disagree, then you preserve the issue and it's raised on appeal. Okay. We have two minutes for rebuttal. Do you want to wrap up right now? Yes. Counsel's failure to determine whether Mr. Smith's prior offenses were both qualifying predicates led him to advise his client to plead guilty, despite the fact that under the current law, a 17-year-old charged with arson would be adjudicated in juvenile court. This performance was arguably ineffective, and we ask that this Court reverse the summary dismissal of Mr. Smith's post-conviction petition. Thank you. State. Assistant State Attorney Amy McGowan for the People. May it please the Court. This is an ineffective assistance of counsel claim. Petitioner has to make an arguable showing, quote, that counsel's performance was sufficient and that he suffered prejudice as a result. Failure to satisfy either means summary dismissal was proper and this Court should affirm. Counsel's performance is measured by objective standard of competency under prevailing professional norms. That means the relevant question is whether a reasonable attorney would have taken a particular course of action given the state of the law at the time of petitioner's plea, and not what an attorney with the benefit of hindsight and support of Miles and Gray might have done. But the amendment to the Juvenile Act was already in existence at the time, right? Yes. Yes, the amendment was. And if you look at the amendment itself and what was being said about it, it said it's perspective only, that it had no retroactive effect. The legislature was clear that this amendment did not affect prior dispositions. And look at what else was available to counsel at the time of petitioner's plea. First is the fact that petitioner had two prior felony convictions. Though his petition, he refers to them as juvenile adjudications, they weren't. He was a convicted felon. Arson is described as the forcible felony. Counsel had Fitzsimmons, where a Supreme Court said there is no distinction between convictions entered when a defendant is a juvenile or when he is beyond the jurisdiction of the juvenile court. And counsel had Banks and Bryant, both cases which applied Fitzsimmons specifically to the armed habitual criminal statute and held that convictions entered while the defendant was a juvenile supported an armed habitual criminal conviction. Ms. McGowan, don't you agree that the pleading requirements really are very low threshold at the first stage? And let's think hypothetically. If this case had gone to trial instead of a plea deal, you would have had the burden of proving up the two predicate convictions, correct? Correct. And defense counsel then should have been aware of the amendments to the Juvenile Court Act and argued that the arson conviction could not be a predicate, right? Don't you think that's what counsel would have done if it had gone to trial? I don't think, Your Honor, no, because that wasn't the prevailing professional norm at the time. Counsel had no reason to think that petitioner's prior felony conviction would not qualify as a predicate offense. But he had Fitzsimmons and Banks and Bryant, all cases saying that convictions entered upon juveniles support armed habitual criminal convictions. But those cases were really old, and the Juvenile Court Act had already been amended, like just recently. Right. And the legislation said that the amendment did not affect prior dispositions. So counsel had no reason to believe that it would affect his clients' prior dispositions. And Your Honors had asked opposing counsel if there were other cases that said this challenge was being made. And there's not. There's none. One case cited within five years that petitioners plead to support that reasonably competent attorneys were making this challenge. In fact, if you look at the cases, if you look at Gray, Dawson, Irrelevant, the armed habitual criminal statutes, all counsel in all of those cases stipulated that they're qualifying prior convictions when the defendants were juveniles. That was the professional norm. Let me ask you this. So we're at the first stage, and to survive first stage, the bar is relatively low, right? Yes. And so we do know that the amendment was in existence at the time when the 402 conference took place and when the defendant pled guilty. So isn't that sufficient? I mean, we do have some basis here, don't we, to get past the first stage? No, respectfully, Your Honor, I don't think so. The case Arturo Williams is directly on point. That, too, was a first stage petition where Petitioner claimed his counsel was ineffective for failing to challenge the use of a prior conviction entered while he was a juvenile to support an armed habitual criminal conviction. Petitioner, too, relied on Miles' support. And the court found that a plain reading of the amendment would suggest to a reasonably prudent attorney that it had no bearing on defendants previously convicted in criminal court for offenses they committed when they were 17 years old. The court stated that before Miles, Fitzsimmons, Banks, and Bryant, both those cases, that represented how courts treated a minor's conviction at the time of Petitioner's trial and direct appeal. And that was in 2015-2016, the same exact time as this Petitioner's plea. And the cases, as I just stated, they frayed us and irrelevant. Even Miles and the DeAndre Williams case, the mandatory X cases, those counsel, they all stipulated that the prior convictions warranted mandatory X sentencing or supported the armed habitual criminal conviction. That was a really professional norm. That's the course of action that reasonably competent attorneys were taking. And nothing has been submitted to support otherwise. So while- You know, you've been mentioning these cases, Miles, Gray, Williams, irrelevant. Doesn't the split in the first district and between the first and fourth districts on the law affecting predicate offenses committed while a juvenile mean that here this claim is at least arguable? I think those cases would say, and if Gray is the Supreme Court right now, those cases would go towards whether Petitioner made an arguable showing of prejudice. And I would say that if Gray is decided in people's favor, Petitioner's foreclosure showing prejudice. If Gray is decided in Petitioner's favor, he has support for an argument that he would have been prejudiced if counsel failed to make the argument now. This still does not show that counsel's failure to raise this claim in 2015 resulted in prejudice, that the result of the 2015 proceeding would have been different. Was that because the person couldn't be prescient, what I was talking about with your opponent, your opposing counsel? I'm sorry, could you repeat yourself? Does this sort of go to the fact that, I mean, are you trying to argue that counsel couldn't be prescient? He couldn't know what the future was going to hold? Certain judges. Justice Petitioner hasn't shown that reasonably competent attorneys were making this challenge. He hasn't shown that circuit courts were agreeing in 2015. And that's what the court was saying in Davis. It's a 2014 case on page 18 of my brief. There the underlying issue went to Petitioner's favor, whether a warrantless search was unreasonable. And the court said, when assessing counsel's performance, the understanding of the law must be considered in the context of the state of the law at the time. And even if counsel had raised this, the motion to suppress wouldn't have been likely to succeed because all the support came after the fact. The court couldn't have relied on that in directing a motion to suppress. So just as Petitioner hasn't shown that reasonably competent attorneys were taking this course of action, there's no support that had been raised in 2015 that the circuit court would have responded favorably. Let me ask you this. So basically what they're arguing is that because the amendment was in existence, although there was no case law at the time, that interpreted how duplicability of it would be, why couldn't counsel have been the first here and just take the leap and say, you know, it is applicable here and my client shouldn't plead? Well, sure, any counsel could be the first. Somebody has to write. The question isn't, could counsel have been the first person to raise this? Did counsel have to break ground? The question is, was counsel not acting below an objective standard of reasonableness? And he's not. And just as the Court in Arturo Williams said, there was nothing to suggest to a reasonably prudent attorney that this amendment had any effect on prior dispositions or prior convictions being used for the armed provincial criminal statute. So in sum, the cases that have been presented show that the professional norm was that they were conceding that these prior convictions qualified. And then their conduct was later challenged, as in Arturo Williams, even in Dawson. The Dawson court, though it was just a footnote, supported the reasoning from Arturo Williams in rejecting an ineffective assistance of counsel claim. And no cases show otherwise. There's not one case that says that reasonably competent attorneys shouldn't have challenged this or that it was reasonable to. They all, the only two cases that addressed it, and if that's the counsel, have said that reasonably prudent attorneys were considering banks and Bryant Fitzsimmons and understanding that the Juvenile Court Act had no amendment on prior dispositions. So if we were to move this on to the next stage, what's going to happen there? If it were done to the next stage, the positioner would have a higher burden, which I don't think he would be able to satisfy. Obviously, I can't predict the future, but my guess is that if it were to go to second stage, where counsel would be appointed and could amend the petition, that this claim would get ditched because it's not a good one. It's not a viable one, and I don't think appointed counsel would proceed on it. Now, depending on Gray, if Gray is decided in petitioner's favor, I think the issue would change to whether his underlying, whether his prior conviction could support the armed habitual criminal statute. But that's not the issue here. The issue here is whether petitioner's counsel, well, whether counsel's conduct in 2015 fell below an objective standard of reasonableness and prejudice to petitioner, and he has not made that showing, not arguably. So for these reasons, and those stated in our brief that people asked, you affirm full report's ruling. Any other questions? No. No. Okay, thank you. Thank you. Well, I would hope that a post-conviction attorney would not ditch this claim at second stage proceedings because it is a viable claim, which is why I'm here today. The impending here is that we're not asking this court or any court to retroactively apply the Juvenile Court Act. Mr. Smith's arson conviction remains a conviction. It is on his background. It will remain on his background. He will suffer the collateral consequences of that conviction. We're not asking for it to be changed to an adjudication. What we're asking is for this court to look at the plain language of the on-judicial criminal statute and to realize that because it's in the present tense, what it requires of all of us is to look at what is currently, what kinds of offenses are currently classified as qualifying predicate convictions. Counsel mentioned Fitzsimmons, Banks, Bryant. All of these cases were before the 2014 amendment, and so they're just not applicable here because this same argument could not be raised because those offenses would still have qualified as predicates because the amendment didn't happen, right? Another panel of this court in People v. Arturo Williams came out the other way, but again, they focused on the Juvenile Court Act and whether, you know, was it the legislature's intent that this affect things, but it's not the legislature's intent in the Juvenile Court Act that is important here. What's important is the legislature's intent for the on-judicial criminal statute, and the plain language shows that their intent for that statute is for us to look at the current state of the law. So if the personal felony statute was changed to eliminate some of those offenses, we would expect an attorney to look at that and to raise that. Same with, you know, the Controlled Substances Act, the Cannabis Control Act. The legislature clearly left room in this statute to perhaps take into account prevailing norms and how prevailing norms might change with drugs or with juveniles, right? That's why they used the present tense. And so can you cite the part of the statute where you're saying that they used the present tense? Yes, as defined in Subsection A, as described, and is punishable. Those are all using the present tense. You know, if it wasn't the present tense, there are a couple ways that the legislature could have framed these things. It just said, after having been convicted of a forcible felony, after having been convicted of a Class III offense under the Cannabis Control Act, right? But instead they said, is punishable. Or they could have said, you know, was punishable at the time of the offense, of the prior offense. You know, they could have made it very explicit and said, no, we just want to look at the status of what that case was at the time. But they didn't. They used this present tense language. And so that means that we have to look at the present state of the law. I would like to point out that Gray does involve a claim of ineffective assistance because his attorney went beyond just merely stipulating to his predicates. His attorney actually stipulated that his prior offenses were sufficient to sustain a conviction for untabitual criminal. So this is, it's not the main part of Gray, but it is an aspect of that case that is in front of the Supreme Court right now. And I know that the Gray appellate decision did not discuss that, but there still is that aspect of ineffectiveness there. Just like there is here. And is the ineffectiveness, does it go just to the advice given at the time of the plea? Or I didn't see either side talk about another portion of the pro se petition that talked about how his counsel also didn't file a post-plea motion or a notice of appeal. What about that? Do you mean that the counsel was ineffective for those reasons as well, not just at the time of the plea? Yes. I mean, I do think that he would be ineffective for those reasons. I mean, it does seem, I mean, Mr. Smith himself filed some pro se pleadings after his plea. It seems like, you know, he wanted to withdraw. I, you know, again, I don't know why. Counsel did not file any motions. I don't know if it was too late, if he just didn't agree. He was a private attorney. Maybe Mr. Smith no longer had the money to pay him to do these things, and he did not know he could, you know, request a court-appointed attorney. But, again, these are things that could potentially come out, you know, even at a second hearing or at an evidentiary hearing. But the issue here is the ineffectiveness at the time of the plea, correct? Correct. Yes. And going back to, you know, kind of what was happening at the time of the plea, I mean, the court would, no court would need case law to determine this. All they needed to do was look at the plain language of the armed habitual criminal statute and then meet the juvenile court after the amendment. So they didn't need any, right? This is in, you know, the people, yeah, the people cited, people versus Macklin, which disagreed with an ineffectiveness claim based on, you know, eyewitness experts. But in people versus, because it said that you... Macklin wanted to start ramping up. Yeah, because Lerner had not been decided yet at the time of the trial. But Lerner itself said, well, this was a 25-year, you know, journey where the court realized that things were changing. That's not what happened here. What happened here is there was an amendment and it went into effect on January 1, 2014. You know, an attorney is expected to look at the current state of the law to determine whether a client's prior offenses qualify as predicate convictions. That was the norm in 2015 when Mr. Smith was charged with armed habitual criminal. That was the norm in 2016 when his attorney advised him to plead guilty to being an armed habitual criminal. And it's the norm today. So that was the prevailing norm that this Court needs to look at. Counsel's performance was absolutely, arguably ineffective. Because Mr. Smith alleged that his attorney misadvised him, this Court should reverse the summary dismissal of this post-conviction petition. Thank you. Thank you. We want to thank counsels for providing us with a very interesting case. You can sit down. And a well-argued case as well. So this Court is going to take this under advisement. We're going to take a very short recess so the next parties can come in and get situated.